## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **HENRY D. WHITAKER,** | ✦ | |
| | ✦ | |
| **Plaintiff,** | ✦ | |
| | ✦ | |
| **vs.** | ✦ | **CASE NUMBER:  2:07-CV-398-MEF** |
| | ✦ | |
| **META CONTROL, LLC.,** | ✦ | **(Jury Demand)** |
| | ✦ | |
| **Defendant.** | ✦ | |

## BRIEF OF DEFENDANT META CONTROL, LLC.,
## IN SUPPORT OF A
## MOTION FOR SUMMARY JUDGMENT

Meta Control, LLC. ("Meta Control" and sometimes referred to as "Defendant"), by and

through counsel, submits this Brief in Support of its Motion for Summary Judgment.  The

Motion should be granted because the factual record presented to the court establishes that no

genuine issue as to any material fact exists as to any of Henry Whitaker's ("Whitaker" and

sometimes referred to as "Plaintiff") claims, and thus, Meta Control is entitled to a judgment

as a matter of law.

## I.    Introduction

Whitaker filed this action under *42 U.S.C. § 1981* which prohibits intentional race

discrimination in the making and enforcement of public and private contracts, including

employment contracts. *Ferrill v. Parker Group,* 168 F.3d 468, 472 (11th Cir. 1999).[1]
Whitaker alleges he was terminated because of his race, white. Meta Control has filed a
Motion for Summary Judgment on all claims in Plaintiff's Complaint which is supported by
admissible evidence.

## II.    Jurisdiction and Venue

The Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. § 1331*
(federal question) and *28 U.S.C. § 1343* (civil rights). The parties do not contest personal
jurisdiction or venue.

## III.    Summary Judgment Standard

Under *Rule 56(c) Federal Rules of Civil Procedure*, a party's motion for summary
judgment is due to be granted if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there are no genuine issues
as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Rojas v. Florida,*
285 F.3d 1339, 1341 (11th Cir. 2002). "An issue of fact is 'genuine' if the record as a whole
could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if
it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v.
Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[1]Whitaker states in paragraph 1 of his Complaint that it is filed by virtue of the First Amendment
to the Constitution of the United States. However, he does not state a claim or cause of action based
on a violation of the First Amendment.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute as to any material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, *Rule 56(e)* "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Indeed, a party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters,* 901 F. 2d 1578, 1580 (11th Cir. 1990). In this context, a court ruling on a motion for summary judgment must believe the evidence of the nonmoving party and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Bass v. Board County Commissioners, Orange County, Florida,* 256 F.3d 1095 (11th Cir.

2001). After the nonmoving party has responded to the motion for summary judgment, the court must grant the motion if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See, Rule 56(c) Federal Rules of Civil Procedure.*

## IV.    Statements of Undisputed Facts

1.    Meta Control is a limited liability company organized pursuant to the Alabama Limited Liability Company Act, *Ala. Code § 10-12-1 (2008) et seq.,* "to install, fabricate, maintain, repair and control equipment, facilities and structures for automated factories [and automobile industries] . . .". The employees of Meta Control design, manufacture, install, test, and/or maintain equipment that is used in the process of assembling automobiles and assembling parts for automobiles.[2]

2.    The customers of Meta Control include Hyundai Motor Manufacturing of Alabama ("HMMA") and many of the Korean companies who are suppliers to HMMA. The nature of the business of Meta Control requires that its employees work in the HMMA automobile plant, in of the plant of the suppliers, and in the plant of Meta Control. [3]

3.    Chang S. "Chad" Cho ("Cho") is the President and Chief Executive officer of Meta Control. Cho made the decision to employ Whitaker.[4]

---

[2] See Exhibit 1, page 2; Exhibit 2, par. 3, Affidavit of Cho. All exhibits referenced in this Brief are contained in the document titled Evidentiary Submissions of Defendant Meta Control LLC., in Support of a Motion for Summary Judgment.

[3] See, Exhibit 2, par. 4, Affidavit of Cho.

[4] See Exhibit 2, pars. 1 & 7, Affidavit of Cho.

-4-

4.      In August 2005, Whitaker applied for a welder position with Meta Control. Cho interviewed him and made the decision to offer him employment. He accepted the position and was hired by Meta Control as a welder with an hourly wage of $14.00 per hour.[5] There was no employment contract between Meta Control and Whitaker. He was, at all times, an at-will-employee.[6]

5.      Whitaker is a Caucasian male citizen of the United States.[7]

6.      In early October 2005, Cho talked with Whitaker about a promotion to the position of production supervisor, also referred to as a team leader. Meta Control needed someone to supervise the welders who were working at the various job sites. Whitaker agreed to accept the promotion.[8]

7.      Effective October 31, 2005, Whitaker was promoted to the position of production supervisor with a salary of Forty Thousand Dollars ($40,000) per year. Cho made the decision to promote Whitaker.[9]

8.      Each of the production supervisors or team leaders were supervised by an engineer. The engineers are referred to as production managers. All of the engineers, at that time, are Korean and all had prior experience working in Korea. After Whitaker's promotion,

---

[5] See  Exhibit 3; Exhibit 2, par. 7, Affidavit of Cho.

[6] See Exhibit 2, par. 7, Affidavit of Cho.

[7] See, Complaint, paragraph 3, page 1; Exhibit 2, par 5, Affidavit of Cho.

[8] See Exhibit 2, par. 8, Affidavit of Cho.

[9] See Exhibit 3; Exhibit 2, pars. 8 & 9, Affidavit of Cho.

Meta Control employed three (3) engineers. The engineers were Byung Gyoo "Greg" Min, Sang Soo "Steve" An, and Hyung Seon Pyo. When Whitaker held the position of production supervisor, he was supervised by Sang Soo "Steve" An. During his employment with Meta Control, Whitaker never held the position of production manager. The position of production supervisor and the position of production manager are entirely different positions at Meta Control.[10]

9.    In late October 2005, Meta Control received notice that Whitaker's salary was subject to a withholding order of the Circuit Court of Montgomery County, Alabama (Family Division) for child support payments. Meta Control answered the court's order on or about November 2, 2005, and started withholding child support payments from Whitaker's salary.[11]

10.    When Whitaker was employed by Meta Control, the engineers had a lot of experience performing their duties. However, they did not speak English very well. Cho decided that Meta Control should employ someone who spoke Korean and English to act as a liaison between the engineers and the other employees who did not speak Korean. Whitaker did not speak Korean. In November 2005, Metal Control employed Jae Il Lee ("Lee") to work as an Assistant Production Manager. Lee's nationality is Korean. Lee's duties included acting as a liaison between the engineers and the production supervisors. Lee also translated and conveyed the instructions and/or directions from the engineers to the other employees. Lee speaks both Korean and English. Lee received instructions from the engineers in Korean and

---

[10] See Exhibit 2, pars. 10, 11, 12, 13, & 14, Affidavit of Cho.

[11] See Exhibits 4 & 5; Exhibit 2, par. 15, Affidavit of Cho.

conveyed the instructions to other staff, as required, in English. Cho made the decision to employ Lee and gave him the title Assistant Production Manager. Cho told the production supervisors, including Whitaker, that Lee would act as a liaison between them and the engineers and he would be conveying instructions and/or directions from the engineers to them.[12]

11.    In February 2006, Whitaker requested that he be allowed to take a voluntary demotion to his prior position of a welder. The reason given by Whitaker for this request was that he could earn more moneys working overtime as a welder. Cho granted Whitaker's request to take a voluntary demotion. Cho also increased Whitaker's hourly rate of pay to $19.00 per hour.[13]

12.    When Whitaker worked overtime, he was able to significantly increase his bi-monthly earnings by working overtime as a welder. For example, Whitaker's bimonthly pay as a salaried production supervisor was $1,666.67 on January 27, 2006, and his bimonthly pay on February 27, 2005, as an hourly welder working overtime was $3,471.40.[14]

13.    In May 2006, Whitaker started engaging in heated disagreements with employees of Meta Control, including Lee, and engaging in temper tantrums in the presence of persons employed by the customers of Meta Control. On several occasions, Cho personally witnessed

---

[12] See Exhibit 6; Exhibit 2, pars. 16, 17 & 18, Affidavit of Cho.

[13] See Exhibit 2, par. 19 Affidavit of Cho; Exhibit 7.

[14] See Exhibit 2, par. 20 Affidavit of Cho; Exhibits 7 & 8.

these temper tantrums and had to intervene to keep the situation from escalating.[15]

14.     On several occasions, Lee reported to Cho that Whitaker refused to follow job related instructions and threaten him because of a disagreement with the instructions. On one occasion, Cho observed Whitaker engage in a heated disagreement with Lee and heard him threaten Lee.  Cho intervened to stop this incident.  Lee told Cho he was translating instructions from the engineers to Whitaker.[16]

16.     Cho did not immediately terminate Whitaker. Cho met with Whitaker on several occasions and counseled him about complying with the job related instructions and behaving appropriately in the work place.  Whitaker always had an excuse for his behavior or defended his actions as disagreements with, or concerns related to the manner in which other employees of Meta Control performed their duties.  Whitaker always promised that he would be careful in the future about his behavior in the workplace.[17]

17.     While working at HMMA in May 2006, Whitaker responded to the instructions of an HMMA supervisor by engaging in a temper tantrum, cursing the supervisor and making threatening remarks.  This incident was witnessed by Cho.  The incident caused serious problems for Meta Control.  After this incident, Cho started to think about terminating Whitaker.[18]

---

[15] See Exhibit 2, par. 21 Affidavit of Cho.

[16] See Exhibit 2, par. 22 Affidavit of Cho.

[17] See Exhibit 2, par. 23 Affidavit of Cho.

[18] See Exhibit 2, par. 24 Affidavit of Cho.

18.    A few days after the HMMA incident, Whitaker barged into Cho's office and demanded that he terminate Lee because of a disagreement with a job related issue. When Cho stated he would speak with Lee about the incident, Whitaker became angry and threaten Cho because he would not immediately terminate Lee. After this incident, Cho made the decision to terminate Whitaker's employment with Meta Control.[19]

19.    After Whitaker's termination, Lee remained in the position of assistant production manager and was never promoted. When Lee's employment with Meta Control ended, he was employed in the position of assistant production manager.[20]

20.    Whitaker has not filed a claim or lawsuit against Meta Control based upon a claim of wrongful termination for an on-the-job injury in violation of Alabama Workers' Compensation Act.[21]

21.    Meta Control was formed in April 2005. Cho has been the President of Meta Control since the date it was formed. No other employee of Meta Control has engaged in behavior similar to the behavior demonstrated by Whitaker in the workplace. Cho has terminated several Caucasian employees and non-Caucasian employees because of poor job performance. Cho's decision to terminate Whitaker was based on inappropriate behavior in the workplace and the incident when he barged into Cho's office, demanded that Lee be

---

[19] See Exhibit 2, par. 25 Affidavit of Cho.

[20] See Exhibit 2, pars. 26 & 27 Affidavit of Cho.

[21] See Exhibit 2, par. 28 Affidavit of Cho.

terminated and threatened Cho.[22]

## V.    ARGUMENT

### A.    Facts as alleged in the Complaint.

In paragraph 11 of the Complaint, Plaintiff alleges:

"On or about May 23, 2006, Mr. Chad Cho, President of Meta Control, LLC., brought Plaintiff into his office at approximately 8:25 A.M. Mr. Cho informed Plaintiff that due to a recent health condition suffered by Plaintiff, the defendant determined that he should be fired. Plaintiff had missed work the previous Thursday and Friday on approved and scheduled vacation. The purpose of the vacation was to attend a doctor's visit relevant to high blood pressure. At first Plaintiff assumed Mr. Cho was referring to his high blood pressure condition."

In paragraph 12 of the Complaint, Plaintiff alleges:

"In an unrelated matter, in March 2006, Plaintiff had injured his hand on the job. The condition involving Plaintiff's hand was improving and Plaintiff was receiving medical care through Worker's Compensation. Plaintiff assumed at the time that Mr. Cho may also be referring to the hand injury. In any event, neither health condition directly affected Plaintiff's ability to work."[23]

In paragraph 13 of the Complaint, Plaintiff alleges:

"Plaintiff soon became suspicious that the termination for an alleged health condition was pretextual. Meta Control LLC., had hired a Korean nation named, or referred to as Mr. Eric Lee. Mr. Lee and Plaintiff had worked together for a number of weeks prior to the termination. Mr. Cho explained to Plaintiff that Mr. Lee was to be Plaintiff's assistant.

In paragraph 16 of the Complaint, Plaintiff alleges:

"Plaintiff is of the belief that Mr. Lee was afforded the opportunity to take the production manager position because of his race and national origin being that

---

[22] See Exhibit 2, pars. 29, 30 & 31 Affidavit of Cho.

[23] There is no claim or cause of action in the complaint that Plaintiff was terminated for a health reason in violation of a federal or state law.

of Korean. Mr. Lee is twenty-three years old and had no experience in production and no experience in management."[24]

**B.    42 U.S.C. Section 1981**

42 U.S.C. Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...". The phrase to make and enforce contracts is defined in subsection (b) of the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." This code section has been interpreted to include employment contracts. *Ferrill v. The Parker Group,* 168 F.3d 468, 472 (11th Cir. 1999). Concomitantly, this court has held that a Section 1981 claim can be asserted by an at-will-employee because there is a contract as that term is used in Section 1981. *See, Lane v. Ogden Entertainment, Inc.,* 12 F. Supp 2d 1261, 1272 (M.D. Ala. 1998); *see also, Faulk v. Home Oil Company, Inc.,* 184 F.R.D. 645, 1999 U.S. Dist. LEXIS 2891(M.D. Ala. 1999).

The elements of a cause of action under 42 U.S.C. Section 1981 are (1) that the plaintiff is a member of a racial minority;[25] (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Kinnon v. Arcoub, Gopman & Associates, Inc.,* 490 F.3d 886, 891

---

[24] Whitaker does not allege a cause of action based on age discrimination.

[25] The Supreme Court of the United States held in *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S.273, 286 (1976) that "§ 1981 is applicable to racial discrimination in private employment against white persons."

(11th Cir. 2007), *quoting Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1270 (11th Cir. 2004).

In a disparate treatment claim by a Caucasian plaintiff under Section 1981, the first element of a *prima facie* case is apparently met by demonstrating that the plaintiff belongs to a protected class.[26] This court in a case involving a Caucasian plaintiff, without addressing this issue, held that Section 1981 claims have the same legal elements and are analyzed in the same manner as Title VII claims. *McGaughy v. Kitchens Express,* 2007 U.S.LEXIS 32100 (M.D. Ala. May 1, 2007). It is clearly established that Title VII prohibits discrimination against a Caucasian person as well as non-Caucasian persons. *Bass v. Board of County Commissioners,* 256 F.3d 1095 (11th Cir. 2001).

### 1.    Whitaker cannot prove intentional discrimination.

In this case, Whitaker's only allegation is that he is "suspicious that [his] termination for an alleged health condition was pretextual" because he "is of the belief that Mr. Lee was afforded the opportunity to take the production manager position because of his race and national origin being that of Korean."[27] Section 1981 requires proof of intentional discrimination. *Hendricks v. Baptist Health Services,* 278 F. Supp. 1276, 1286 (M.D. Ala. 2003). "Discriminatory intent can be established through either direct or circumstantial evidence." *Id.*

---

[26] See, *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 (11th Cir. 2005).

[27] See, paragraphs 13 & 16 of the Complaint.

### a.    Direct Evidence

There are no facts alleged in the complaint attempting to establish direct evidence of discrimination. Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. *Denny v. City of Atlanta,* 247 F.3d 1172 (11th Cir. 2001), *quoting EEOC v. Joe's Stone Crab, Inc.,* 220 F.2d 1263, 1286 (11th Cir. 2000). The Eleventh Circuit Court of Appeals has defined direct evidence as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Wilson,* 376 F.3d at 1086.

In the context of employment discrimination cases, it is well-settled that direct evidence is evidence which, if believed, proves the existence of a fact in issue, such as the existence of discriminatory motive, without inference or presumption; if the evidence merely suggests that the employer acted with a discriminatory motive then it is circumstantial evidence, not direct evidence. *Id.* at 1086-87. "Therefore, remarks by non-decision makers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.,* 161 F. 3d 1079, 1330 (11th Cir. 1998). Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other that to discriminate" on the basis of some impermissible factor. *Carter v. City of Miami,* 870 F. 2d 578, 582 (11th Cir. 1989).

It is clear there is no direct evidence of discrimination by Defendant against Whitaker because of his race.

-13-

**b.**    **Circumstantial Evidence**

**i.**    **Overview of the Legal Paradigm**

Sections 1981claims are analyzed in the same manner as Title VII claims. *Standard v. A.B.E.I. Services, Inc.,* 161 F. 3d 1318, 1330 (11th Cir. 1998). Therefore, in evaluating disparate treatment claims supported by circumstantial evidence, the court must use the framework established by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). To establish a discrimination claim by circumstantial evidence under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of disparate treatment. *Wilson,* 376 F.3d at 1087. The essence of the *prima facie* case is that the plaintiff presents evidence sufficient to allow a fact-finder to draw a reasonable inference that the defendant used prohibited criteria in making an adverse employment decision about the plaintiff.

A plaintiff may establish a *prima facie* case in an employment termination claim based on race discrimination under Title VII by showing that: (1) he is a member a protected class; (2) he was qualified for the position at issue; (3) he was discharged despite his qualification; and (4) he was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's class or (b) a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. *Wilson, 376 F. 3d at 1087; Keel v. Roche,* 256 F. Supp. 2d 1269 (M.D. Ala. 2003) , *quoting Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D. Ala. 2001).

The Eleventh Circuit Court of Appeals has emphasized that the requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible. *See, e.g., Schoenfeld v. Babbitt,* 168 F.3d 1257, 1268 (11th Cir. 1999)

> "In cases where the evidence does not fit neatly into the classic *prima facie* case formula, for example, [the Eleventh Circuit has] stated that a '*prima facie* case of disparate treatment can be established by any proof of actions taken by the employer from which we infer discriminatory animus because experience has proven that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations."

(citing *Hill v. Metro. Atlanta Rapid Trans. Auth.,* 841 F.2d 1533 (11th Cir. 1988), *modified,* 848 F.2d 1522 (11th Cir. 1988) quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 576 (1978)).

### 2.    Whitaker cannot prove his *prima facie* case of discriminatory termination.

Cho made the decision to employ Whitaker as a welder. He also made the decision to promote Whitaker to the position of production supervisor. Whitaker requested a demotion to a welder position. Cho granted his request and made the decision to increase his hourly rate of pay to $19.00 per hour. Finally, Cho made the decision to terminate Whitaker's employment because of repeated inappropriate behavior in the workplace.[28]

---

[28] Meta Control does not admit Whitaker held the position of production supervisor when he was terminated. The evidence establishes Whitaker was a welder when he was terminated. Similarly, Meta Control does not admit that Whitaker satisfactorily performed his job duties when he was terminated. *See, Clark v. Coats & Clark, Inc.,* 990 F. 2d 1217, 1227 n.3 (11th Cir. 1993) (noting "whether an employee possesses the qualifications for a position is ... generally distinct from the issue whether he performed the job satisfactorily.").

Whitaker has not alleged that his demotion to the position of welder in February 2006, was because of his race. Lee was not a welder and cannot be a comparator. Thus, Lee's position is totally immaterial to a claim of wrongful termination by Whitaker based on race. Therefore, Defendant's motion for summary judgment is due to be granted.

Assuming for purposes of argument that Whitaker creates a question of fact regarding the position he held when he was terminated, he still cannot prove the fourth element of his *prima facie* case. The Eleventh Circuit Court of Appeals has adopted two means by which a plaintiff may prove the fourth element. Whitaker must prove that he was replaced by a person outside his protected class or that he was treated less favorably than a similarly situated individual outside his protected class. *Maynard v. Bd. of Regents,* 342 F. 3d 1281, 1289 (11th Cir. 2003); *Keel v. U.S. Dep't of Air Force,* 256 F. Supp. 1269, 1285 (M.D. Ala. 2003); *accord, Williams v. Motorola,* 303 F. 3d 1284, 1293 (11th Cir. 2002). Whitaker cannot prove his *prima facie* case under either paradigm.

Whitaker is "of the belief that Mr. Lee was afforded the opportunity to take the production manager position because of his race and national origin being that of Korean."[29] Cho made the decision to hire Whitaker to fill a vacant welder position in August 2005. Cho made the decision to promote Whitaker to the position of production supervisor in October 2005. Lee was employed in November 2005 to fill the position of assistant production manager. Whitaker was terminated in May 2006. Lee was not promoted after Whitaker's

---

[29] Complaint, paragraph 16.

termination. Lee held the position of assistant production manager when his employment with Meta Control ended.[30]    Therefore, Defendant's motion for a summary judgment is due to be granted.

### 3.    Whitaker cannot establish that a non-Caucasian employee engaged in the same conduct and was not terminated.

In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, Whitaker and the other employee must be "similarly situated in all relevant respects." *Holifield v. Reno,* 115 F. 3d 1555, 1556 (11th Cir. 1997). "The quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F. 3d 1364, 1368 (11th Cir. 1999). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in a different way. *Jones v. Bessemer Carraway Med. Ctr.,* 137 F. 3d 1306, 1311 (11th Cir. 1998), *superceded in non-relevant part on denial of reh's,* 151 F. 3d 1321 (1998). "The most important factors in the disciplinary context ... are the nature of the offenses committed and the nature of the punishment imposed." *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001). "If a plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, [his] case must fail because the burden is on [him] to establish [his] prima facie case." *See, Jones,* 137 F. 3d at

---

[30] See, Exhibit 2, par. 27 Affidavit of Cho.

1311; *Silvera v. Orange County Sch. Bd.,* 244 F. 3d 1253, 1259 (11th Cir. 2001)(reversing

judgment in favor of plaintiff because the employer was entitled to judgment as a matter of law

where plaintiff's comparator engaged in fewer instances of misconduct than plaintiff);

*Holifield v. Reno,* 115 F. 3d 1555, 1563 (11th Cir. 1997) (affirming summary judgment where

plaintiff failed to produce sufficient evidence that non-minority employees with whom he

compares his treatment were similarly situated in all aspects, or that their conduct was of

comparable seriousness to the conduct for which he was discharged); *Nix v. WLCY*

*Radio/Rahall Communications,* 738 F. 2d 1181, 1185-87 (11th Cir. 1984) (African-

American plaintiff who was replaced by another African American after termination failed to

make out a *prima facie* case of race discrimination because he did not meet his burden of

showing that a white employee in similar circumstances was retained while he was fired).

Cho has testified, based on his personal knowledge, that no non-Caucasian employee

engaged in behavior similar to Whitaker and was not terminated. Cho testified that he has

terminated several Caucasian and non-Caucasian employees for a failure to perform their job

duties. As a matter of law, Whitaker cannot identify a similarly situated non-Caucasian

employee who received more favorable treatment. Therefore, Defendant's motion for a

summary judgment is due to be granted.

### C.    Meta Control had legitimate, nondiscriminatory reasons for Whitaker's termination.

If an Whitaker establishes a *prima facie* case, the burden shifts to Meta Control to "articulate some legitimate, nondiscriminatory reason:" for the termination. *McDonnell Douglas,* 411 U.S. at 802; *Wilson,* 376 F. 3d at 1087. The Eleventh Circuit Court of Appeals has held the employer's burden is "exceedingly light" requiring only that the employer offer evidence that could lead a rational fact-finder to believe the decision was not discriminatory. *Turnes v. AmSouth Bank, N.A.,* 36 F. 3d 1057, 1061 (1994). At this stage, Meta Control has only the burden of production, not of persuasion. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-55 (1981). It is not necessary that the court believe the evidence; the court's analysis "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). If the employer is able to satisfy this burden, "the McDonnell Douglas framework – with it presumptions and burdens' – disappear[s] and the sole remaining issue [is] 'discrimination vel non.'" *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 142-43 (2000).

In May 2006, Whitaker started engaging in heated disagreements with employees of Meta Control, including Lee, and engaging in temper tantrums in the presence of persons employed by the customers of Meta Control. On several occasions, Cho personally witnessed these temper tantrums and had to intervene to keep the situation from escalating.

On several occasions, Lee reported to Cho that Whitaker refused to follow job related instructions and threaten him because of a disagreement with the instructions. On one

occasion, Cho observed Whitaker engage in a heated disagreement with Lee and heard him

threaten Lee. Cho intervened to stop this incident. Lee told Cho he was translating instructions

from the engineers.

Cho did not immediately terminate Whitaker.   Cho met with Whitaker on several

occasions and counseled him about complying with job related instructions and behaving

appropriately in the workplace. Whitaker always had an excuse for his behavior or defended

his actions as disagreements with, or concerns related to the manner in which other employees

of Meta Control performed their duties. Whitaker always promised that he would be careful

in  the future about his behavior in the workplace.

While working at HMMA in May 2006, Whitaker responded to the instructions of an

HMMA supervisor by engaging in a temper tantrum, cursing the supervisor and making

threatening remarks. Cho personally witnessed this incident and overheard Whitaker cursing

the HMMA supervisor. The incident caused serious problems for Meta Control. After this

incident, Cho started to think about terminating Whitaker.

A few days after the HMMA incident, Whitaker barged into Cho's office and demanded

that Lee be terminated because of a disagreement with a job related issue. Cho told Whitaker

that he would talk  with Lee.  Whitaker became angry and accused Cho of not believing him

and taking Lee's side.  Whitaker said something to the effect "this is not the end of this" and

as he was leaving Cho's office said "and, I know where you live." This statement by Whitaker

frightened Cho.   After this incident, Cho made the decision to terminate Whitaker's

employment with Meta Control.

Beyond question, Meta Control has articulated numerous legitimate, nondiscriminatory reasons for Whitaker's termination. *See also, Statement of Undisputed Facts.* Therefore, Defendant's motion for summary judgment is due to be granted.

**D.    Whitaker cannot establish that the proffered reasons by Meta Control for his termination are mere pretexts for discrimination.**

Meta Control has established nondiscriminatory reasons for the termination of Whitaker. The burden now shifts to Plaintiff to offer evidence that the alleged reasons are a pretext for illegal discrimination. *Vessels v. Atlanta Ind. School System,* 408 F.3d 763,768 (11th Cir. 2005).

To avoid summary judgment, Whitaker must introduce "significantly probative evidence showing that the asserted reasons are merely a pretext for discrimination." "A reason in not a pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Johnson v. Atlanta Independent School system,* 137 F. 3d 311, 315 (11th Cir. 2005). "The general rule in analyzing discrimination claims based on circumstantial evidence is that when a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the proffered reasons is unworthy of credence in order to establish pretext." *Lewis v. Chattahoochee Valley Community College,* 136 F. Supp. 2d 1232, 1239 (M. D. Ala. 2001).

Thus, pretext can be established by "presenting evidence tending to show that the predicate facts underlying the proffered reason were false" and that "the employer knew them to be false at the time of [its] purposed reliance" or that "the proffered reason may involve a

disputed fact of a kind that it is improbable that the employer could be mistaken about it."
*Keel v. Roche,* 256 F. Supp. 2d 1269, 1287 (M.D. Ala. 2003), *quoting Walker v. NationsBank of Fla.,* 53 F. 3d 1548, 1564 (11th Cir.1995).    Concomitantly, actions based on opinions that are wrong and nondiscriminatory do not violate Section 1981. *Id.* at 1287.

        At the summary judgment stage, the issue is whether there is sufficient evidence from which a reasonable jury could find that a discriminatory reason motivated the employer or that the employer's proffered explanation is unworthy of credence. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981); *Combs v. Plantation Patterns, Meadowcraft, Inc.,* 16 F.3d 1519, 1528 (11th Cir. 1997).

        Cho made the decision to employ Whitaker as a welder. Cho made the decision to promote Whitaker to the position of production supervisor. Cho made the decision to increase Whitaker's hourly rate of pay to $19.00 per hour when he requested a voluntary demotion to a welder position.

        Cho testified that Whitaker's termination had absolutely nothing to do with his race. He also testified his decision to terminate Whitaker was based on inappropriate behavior in the workplace and the incident when he barged into Cho's office, demanded that Lee be terminated, and threatened Cho.

        There is no evidence from which a reasonable jury could find that Cho's testimony is false. Therefore, Plaintiff cannot demonstrate that each reason articulated by Meta Control is unworthy of credence and he cannot prove his claim that he was terminated because of his race. Under these facts, Defendant's motion for a summary judgment is due to be granted.

## VI.    CONCLUSION

WHEREFORE, Meta Control respectfully requests that this Court grant its Motion and

enter a Summary Judgment as to all of Whitaker's claims as set forth in his complaint.

Respectfully submitted this 10th day of March 2008

G. R. "Rick" TRAWICK (Ala. TRA007)
Attorney for Defendant

SLATEN & O'CONNOR, P.C.
105 Tallapoosa Street, Suite 101
Montgomery, Alabama  36104
(334) 396-8882
(334) 398-8880 fax
rtrawick@slatenlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing instrument upon the following
attorney of record by placing a copy in the United States Mail, and postage prepaid this the 10th
day of March 2008.

K. Anderson Nelms
P. O. Box 5059
Montgomery, Alabama
(334) 263-7733
(334) 832-4390

G. R. "Rick" Trawick